**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

POWWOW, LLC, D/B/A PASS
CHARTERS, a Michigan Limited
Liability Company,

        Plaintiff,

vs.

VIA AIRLINES, INC, f/k/a CHARTER
AIR TRANSPORT, INC., a Delaware
Corporation,

        Defendant.

Case No. 17-cv-11142

Hon. Arthur J. Tarnow

**AMENDED COMPLAINT**

---

**CLARK HILL PLC**
Attorneys for Plaintiff

Jonathan M. Martone (P73035)
151 S. Old Woodward Ave., Ste. 200
Birmingham, MI  48009
(248) 642-9692
jmartone@clarkhill.com

Thomas M. Dixon (P41870)
500 Woodward Ave., Ste. 3500
Detroit, MI  48226
(313) 965-8300
tdixon@clarkhill.com

**DOERR LAW FIRM PLLC**
Joseph A. Doerr (P66109)
Attorney for Defendant
838 W. Long Lake Road, Ste. 100
Bloomfield Hills, MI 48302
(248) 212-0167
joseph@doerrfirm.com

**PEARSON BITMAN LLP**
Ronnie J. Bitman (FL Bar No.: 0744891)
Attorney for Defendant
485 N. Keller Rd., Ste. 401
Maitland, FL  32751
(407) 647-0090
rbitman@pearsonbitman.com

---

NOW COMES Plaintiff herein, Powwow, LLC, d/b/a Pass Charters ("Pass Charters"), by and through its attorneys, Clark Hill, PLC, and for its Amended

Complaint against Defendant Via Airlines, Inc, f/k/a Charter Air Transport, Inc, states the following:

## PARTIES, JURISDICTION AND VENUE

1. Plaintiff Powwow, LLC d/b/a Pass Charters is a Michigan limited liability company, with a principal business office located at 6450 Highland Road, Suite 1, Waterford, Michigan 48327.

2. Defendant Via Airlines, Inc, f/k/a Charter Air Transport, Inc, (hereinafter "ViaAir") is upon information and belief, a Delaware corporation (incorporated in Colorado on March 25, 1997 under the name Galena Air Services Company, later changing its name to Charter Air Transport, Inc, and then again to Via Airlines, Inc, which, most recently, converted the Colorado corporation into a Delaware corporation in 2016), with a principal place of business located at 218 Jackson Street, Maitland, Florida 32751.

3. Subject matter jurisdiction is proper in this Court pursuant to 28 USC §1332(a)(1) as the matter in controversy is between citizens of different states and exceeds the sum or value of Seventy-Five Thousand Dollars ($75,000.00) exclusive of interest and costs.

4. This Court possess personal jurisdiction over ViaAir, and Michigan's long-arm statute, MCL §600.715, is otherwise satisfied, as Defendant ViaAir entered into a contract with Pass Charters in Michigan (signed by Pass Charters in

Michigan) for the leasing of airplanes to be used by Pass Charters and/or flown into and out of Michigan airports (Oakland County International Airport; Kalamazoo/Battle Creek International Airport), has repeatedly sent and received written, electronic and telephonic communications to/from Pass Charters in Michigan, has repeatedly received and benefitted from financial transactions/payments flowing from Pass Charters in Michigan, has solicited business from Pass Charters in Michigan, and otherwise has systematically and continuously transacted business with Pass Charters in Michigan.

5. Venue is proper in this District pursuant to 28 USC §1391(a)(2) as a substantial part of the events giving rise to Pass Charter's claims occurred in this District.

## GENERAL ALLEGATIONS

*A.   THE PARTIES, GENERALLY.*

6. Pass Charters is a Michigan-based air travel management company specializing, among its other business, in servicing U.S. collegiate athletic teams with brokering dedicated chartered air travel. Among its many clients, Pass Charters does business with numerous NCAA Division One programs including men's and women's basketball, volleyball, soccer, baseball and softball teams, providing charter travel arrangements during the teams' sports seasons.

7.      ViaAir is an air carrier, currently headquartered/based in Maitland, Florida, servicing passenger and cargo charter flight brokers, including Pass Charters.  ViaAir currently operates seven Part 135 certified airplanes under its' FAA Air Carrier Operating Certificate Number GN0A0051 (**Exhibit A, ViaAir's FAA Airline Certificate Information Report**) and four Part 121 certified airplanes under its' FAA Air Carrier Operating Certificate Number 4VAA005L (**Exhibit B, ViaAir's FAA Airline Certificate Information Report**).

8.      Upon information and belief, prior to its renaming as Via Airlines, Inc, ViaAir operated as "Charter Air Transport, Inc," since 1998 under the same Part-135 FAA Air Carrier Operating Certificate Number GN0A0051. Exhibit A, *supra*.

9.      According to ViaAir's website (www.flyviaairlines.com):

> Via Airlines has grown over the past 17 years to become one of the largest providers of scheduled service and Public and Private charters making use of regional equipment in the United States.  The company has grown continuously over that time period while maintaining an excellent safety record.  The company continuously strives and maintains best-in-class safety, quality, workforce experience, stability, and a solid business plan.
>
>          * * *
>
> Today Via Airlines operates two distinct Air Carrier Certificates.  Our FAA 121 Certified airline (4VAA), which is granted authority for both Domestic and Supplemental operations, was the first airline to be certified in the FAA's Part 5 Safety Management System, and operates a fleet of Embrarer ERJ-145's in a 50 seat configuration.  Our FAA Part 135 certified airline (GNOA) operates a fleet of 30

4

passenger Embraer EMB-120's, as well as, a Cessna Citation XL business jet.

10. Upon information and belief, during all times relevant to the Complaint, ViaAir was and remains principally-managed by Amos "Ami" Vizer, who has held himself out as the "Chairman" of ViaAir. See also **Exhibit C, Via Airlines, Inc "Leadership" webpage.**

### B. *Pass Charters Expands Into the Business of Brokering Larger Charter Airplanes.*

11. For some number of years following its entry into the charter air brokerage business, Pass Charters focused on chartering FAR Part 135 designated airplanes with certified air carriers, offering up to 30 seats for a chartered flight. As a broker, Pass Charters would be charged a fixed fee and was required to cover certain costs of operation for each chartered flight it brokered.

12. Among the certified charter air carriers it did business with, Pass Charters regularly brokered chartered FAR Part 135 designated flights with Charter Air Transport, Inc.

13. In approximately 2013, Charter Air Transport, Inc was acquired by Ami Vizer and subsequently changed its name to Via Airlines, Inc.

14. Following the acquisition, ViaAir and Pass Charters entered into an agreement for the provision of a fixed number of dedicated FAR Part 135 designated airplanes on a monthly basis, an arrangement enabling Pass Charters to

5

realize certain cost savings through a reduction in the hourly rates charged for the planes' operation.

15. However, as Pass Charters' business grew, a need developed for larger, FAR Part 121 designated airplanes (offering up to 50 seats per chartered flight) for Pass Charters to broker to its clients along with the smaller, FAR Part 135 designated planes.

16. Given ViaAir's then-lack of a FAR Part 121 certification, Pass Charters, for a period of time, brokered its larger, FAR Part 121 designated airplanes charters with other third-party air carriers.

17. In late-2014, ViaAir, through Ami, approached Pass Charters about its intent to obtain a FAR Part 121 certificate and enter into the larger airplane charter carrier business.

18. During the numerous discussions that ensued, Ami, on behalf of ViaAir, represented that it would obtain a new FAR Part 121 certificate within approximately nine months, and would have operational charter flights on FAR Part 121 designated airplanes by the late-Fall of 2015 at the very latest.

19. Additionally, ViaAir offered to designate Pass Charters as its exclusive, collegiate charter flight partner, promising to provide Pass Charters with up to four dedicated FAR Part 121 designated airplanes on a monthly basis at a mutually beneficial price point.

20. As a result of the representations and promises made on behalf of ViaAir, Pass Charters entered into an Aircraft Dry Lease Agreement dated March 25, 2015 with ViaAir (hereinafter the "Lease Agreement"). **Exhibit D, March 25, 2015 Lease Agreement.**

C. *Despite its Promises and Contractual Obligations, ViaAir Failed to Deliver its FAR Part 121 Airplanes to Pass Charters for the 2015/2016 Business-Season.*

21. Although Pass Charter's business operates year-round, its busiest business-season (the collegiate basketball season) runs from approximately October through March, with the busiest months being January through the end of February.

22. As a direct result of the promises, representation, and obligations of ViaAir within the Lease Agreement, specifically the promised availability, on a dedicated basis, of FAR Part 121 designated airplanes, Pass Charters booked over $13 million in collegiate-charter flights for the 2015/2016 season, including, by way of example, securing agreements with the University of Notre Dame, University of Wisconsin, and Marquette University.

23. Despite the repeated reassurances and representations of Ami on behalf of ViaAir, ViaAir failed to obtain its FAR Part 121 certificate by the Fall 2015. As a result, when its primary business-season began in October 2015, Pass

Charters was forced to find coverage on a flight by flight basis for its clients' charter flight needs.

24. Critically, given the limited number of other companies operating FAR Part 121 air carriers, and the lack of advanced notice to Pass Charters, Pass Charters was forced throughout the season to incur significantly increased costs to secure other charter flights, including having to charter flights with non-party World Atlantic, which operates only large, 150 seat airplanes.

25. Despite its numerous promises that the FAR Part 121 certificate was to be immediately forthcoming, ViaAir never obtained the FAR Part 121 certificate during the 2015/2016 business-season.

26. As a direct result, Pass Charters incurred over $4 million in out of pocket costs related to obtaining alternative-coverage for the promised ViaAir's flights.

27. Additionally, numerous problems arose with ViaAir's provision of its smaller, 30 seat planes (FAR Part 135 designated airplanes) to Pass Charters; flights were often late or cancelled at the last-minute due to mechanical issues or an unavailability of a flight crew, further causing Pass Charters to be forced to find coverage.

28. As a direct result of ViaAir's failure to abide by its obligations under the Lease Agreement, Pass Charters lost several major clients, including the University of Notre Dame, University of Wisconsin and Marquette University.

### D. *ViaAir Approaches Pass Charters Regarding Amending the Lease Agreement for the 2016/2017 Business Season; the Parties Execute a Lease Amendment.*

29. Following ViaAir's disastrous-performance issues during the 2015/2016 business-season, the parties met on several occasions in early-2016 to discuss ViaAir's plan to address Pass Charter's damages and obtain adequate reassurances regarding the availability of FAR Part 121 designated airplanes for the next year.

30. During these meetings and communications, ViaAir continued to promise that it would be obtaining its FAR Part 121 certificate imminently, and by no later than April 2016.

31. Notwithstanding its representations, ViaAir did not obtain its FAR Part 121 certificate by April 2016, nor did it address Pass Charters' damages.

32. Rather, it was not until late-May/early-June 2016 when Ami, on behalf of the newly converted Delaware company, ViaAir, contacted Pass Charters to notify it regarding the issuance of ViaAir's FAR Part 121 certificate.

33. In the ensuing negotiations, the parties discussed the significant problems Pass Charters incurred as a result of ViaAir's deficient performance

under the Lease Agreement, including the lack of available FAR Part 121 designated airplanes and the inconsistent availability of the smaller, FAR Part 135 designated airplanes.

34. In response, Ami, on behalf of ViaAir, made numerous promises and representations regarding the ability of ViaAir to satisfactorily perform under the existing Lease Agreement. Among these representations, Ami promised:

(a) Pass Charters that it would have four FAR Part 121 designated airplanes available for its use on an exclusive and dedicated contractual basis, in addition to the dedicated smaller planes;

(b) ViaAir would provide two full crew per aircraft, which provided Pass Charters continued utilization of aircraft, while meeting the FAA crew scheduling requirements; and

(c) Pass Charters would be ViaAir's exclusive partner to service the collegiate charter air business.

35. Given the importance to Pass Charters of securing exclusive and dedicated access to up to four FAR Part 121 planes, Pass Charters agreed to continue its business relationship with Ami and the ViaAir entities.

36. As a result, Pass Charters and ViaAir entered into an agreement titled "Aircraft Dry Lease Agreement Amendment #1" dated June 7, 2016 (hereinafter the "Lease Amendment"). **Exhibit E, June 7, 2016 Lease Amendment.**

37. Under the Lease Amendment, ViaAir promised Pass Charters exclusive use of its four FAR Part 121 designated 50 seat Embraer ERJ 145 airplanes during Pass Charters' business season; Pass Charters could reduce the total number of dedicated planes by up to two upon notice to ViaAir by September 1st.

38. In exchange, Pass Charters was obligated to pay ViaAir a monthly fixed fee of $129,291.00 per plane, plus block hours variable costs ranging between $1,479.00 to $2,379.00 per hour. The Lease Amendment also further required Pass Charters to make certain security deposits and/or permitted ViaAir to otherwise maintain those security deposits previously made by Pass Charters and held by/in the possession of ViaAir under the initial 2015 Lease Agreement.

39. Finally, the Lease Amendment also granted Pass Charters access, on a non-exclusive basis, to ViaAir's smaller, FAR Part 135 designated airplanes, however no smaller planes were ever available to Pass Charters for the 2016/2017 business season.

**E.  *Despite the Promises to Remedy the Prior Issues, ViaAir Again Fails to Uphold its Contractual Obligations to Pass Charters for the 2016/2017 Business-Season.***

40. In full reliance on the representations of Ami and ViaAir, and the terms of the Lease Agreement and Lease Amendment, Pass Charters again expended significant efforts to market its expanded 50-seat plane charter business,

booking extensive business for the 2016/2017 business season. A booking summary was provided in August to ViaAir indicating the designated aircraft with routes required, customers and schedules, all of which were updated daily by Pass Charters.

41. By early-October 2016, Pass Charters had secured enough business to require three FAR Part 121 designated airplanes to be exclusively available for Pass Charters' use on a monthly basis.

42. Given the prior year's problems, Pass Charters sought additional reassurances from ViaAir, including from Matthew Macri, the Vice President and Director of Operations of ViaAir, that they would be able to deliver the required planes.

43. In response, ViaAir again promised the availability of adequate numbers of planes and hours to meet Pass Charters' business needs. **Exhibit F, October 13, 2016 Email from Matthew Macri.**

44. In actuality, the promises made on behalf of ViaAir again proved to be hollow, as availability issues with ViaAir's planes began immediately when the Fall business season commenced.

45. Although contractually obligated to provide Pass Charters with three FAR Part 121 designated airplanes on an exclusive, dedicated basis each month, ViaAir failed to secure sufficient number of crews in order to operate the planes

when needed and failed to properly manage mechanical issues and maintenance scheduling.

46. As a result, on numerous occasions Pass Charters was not provided with airplanes due to either the unavailability of a crew to operate the plane or because the planes were grounded for mechanical reasons.

47. Additionally, when ViaAir had sufficient crews available to operate flights, it began intentionally diverting FAR Part 121 designated airplanes to cover its Essential Air Service (EAS) program contracts with various regional airports, repeatedly leaving Pass Charters without available, yet promised, planes.

48. Further exacerbating the negative impact of ViaAir's deficient performance under the Lease Amendment, Pass Charters had prepaid for the planes (by way of monthly lease fees and security deposits paid to ViaAir) later rendered unavailable by ViaAir and thus were forced to go even further out of pocket to pay to secure alternative flights with other air carriers.

49. All told, Pass Charters sustained several million dollars' worth of damages as a result of ViaAir's deficient performance for the 2016/2017 business season alone.

50. Additionally, and in contravention of ViaAir's promises of exclusivity for Pass Charter in the collegiate air charter market, ViaAir, through its partner air charter company, Air X Aviation (an entity, upon information and belief, which

acquired an undisclosed majority interest in Via Airlines in September 2016) began contacting Pass Charter's collegiate clients in an attempt to secure business away from Pass Charters. Pass Charters was notified of the same by its current collegiate clients who expressed confusion regarding why they were being contacted by another "partner" of ViaAir.

51. In response to all of the foregoing, Pass Charters has made several demands to ViaAir and Ami to address these issues, including refunding Pass Charters for the unused security deposits and monthly lease fees and further compensating it for its economic losses. **Exhibit G, January 31, 2017 Letter from William Larkin.**

52. Without justification, Pass Charters' requests have been met with refusals by ViaAir and/or Ami to communicate, let alone cooperate in Pass Charters' requested relief.

53. It is as a result of the collective foregoing breaches by ViaAir that Pass Charters now seeks to recover damages it sustained.

## COUNT I: BREACH OF CONTRACT

54. Pass Charters restate each of its preceding allegations as if more fully set forth herein.

55. Pass Charters and ViaAir entered into a contract (appended hereto as Exhibit D, *supra*), which was subsequently amended (appended hereto as Exhibit

E, *supra*), requiring ViaAir to provide and adequately staff with a crew sufficient to operate a certain number of charter airplanes for Pass Charters' use on a monthly basis.

56. Repeatedly during the term of the contract, ViaAir failed and refused to provide and/or otherwise make available the required number of charter airplanes, or related crews, for Pass Charters' use.

57. As a result, ViaAir has breached the various terms of the contract and as a direct consequence of ViaAir's breach of contract, Pass Charters has suffered injuries and damages.

WHEREFORE, Plaintiff Powwow, LLC d/b/a Pass Charters respectfully requests that this Honorable Court enter judgment in its favor in the amount of Plaintiff's damages, including but not limited to its direct, indirect, and consequential damages, together with its costs and attorney fees, and such other and further relief as the Court deems just and proper under the circumstances.

## COUNT II:  UNJUST ENRICHMENT

58. Pass Charters restate each of its preceding allegations as if more fully set forth herein.

59. Pass Charters brings this count in the alternative to Count I, in the event Defendant ViaAir disputes the existence of an enforceable contract or the contract in issue is otherwise found to be unenforceable.

60. During its 2015/2016 and 2016/2017 business seasons (October through March), Pass Charters made payments in excess of $1 million to ViaAir with the expectation that ViaAir would provide Pass Charters with exclusive use of a certain number of dedicated charter airplanes and crews on a monthly basis.

61. Despite having received Pass Charters' payments exceeding $1 million and having accepted, retained, used, and/or benefitted from the same, ViaAir failed and refused to provide Pass Charters with access to and exclusive use of the dedicated charter airplanes and crews. Under the foregoing circumstances, it would be inequitable for ViaAir to retain the benefit conferred by Pass Charters without providing Pass Charters with access to and exclusive use of the dedicated charter airplanes and crews.

62. As a result, ViaAir has been unjustly enriched for its retention of Pass Charters' payments, for which it has not provided a return benefit to Pass Charters for.

WHEREFORE, Plaintiff Powwow, LLC d/b/a Pass Charters respectfully requests that this Honorable Court enter judgment in its favor in the amount of Plaintiff's damages, including but not limited to its direct, indirect, and consequential damages, together with its costs and attorney fees, and such other and further relief as the Court deems just and proper under the circumstances.

## COUNT III: PROMISSORY ESTOPPEL

63. Pass Charters restate each of its preceding allegations as if more fully set forth herein.

64. Pass Charters brings this count in the alternative to Count I, in the event Defendant ViaAir disputes the existence of an enforceable contract or the contract in issue is otherwise found to be unenforceable.

65. ViaAir made a clear and unambiguous promise to Pass Charters that it would provide Pass Charters with exclusive use of a certain number of dedicated charter airplanes and crews on a monthly basis.

66. ViaAir knew or should have known that Pass Charters would rely upon these promises.

67. Pass Charters reasonably and foreseeably relied upon ViaAir's promises and thereby made payments to ViaAir exceeding $1 million, as well as secured contractual commitments with numerous third-parties for the provision of charter air services utilizing the aircraft promised to Pass Charters by ViaAir.

68. ViaAir has failed and refused to provide Pass Charters with access to and exclusive use of the dedicated charter airplanes and crews during Pass Charters' 2015/2016 and 2016/2017 business seasons (October through March).

69. Pass Charters has been injured and damaged by way of its payments made to ViaAir for access to and use of charter airplanes and crews never actually

17

provided as well as by way of the damages it sustained in connection with its contractual agreements with third-parties, including the out of pocket costs incurred by Pass Charter to secure alternative coverage for the brokered charter flights and those economic losses sustained by Pass Charters as a result of the termination of its contracts with third-parties.  In order to avoid injustice, ViaAir should be ordered to fulfill its respective promises.

WHEREFORE, Plaintiff Powwow, LLC d/b/a Pass Charters respectfully requests that this Honorable Court enter judgment in its favor in the amount of Plaintiff's damages, including but not limited to its direct, indirect, and consequential damages, together with its costs and attorney fees, and such other and further relief as the Court deems just and proper under the circumstances.

Respectfully submitted,

CLARK HILL PLC

/s/ Jonathan M. Martone
CLARK HILL PLC
Attorneys for Plaintiff
Jonathan M. Martone (P73035)
151 S. Old Woodward Ave., Ste. 200
Birmingham, MI  48009
(248) 642-9692
jmartone@clarkhill.com
Thomas M. Dixon (P41870)
500 Woodward Ave., Ste. 3500
Detroit, MI  48226
(313) 965-8300
tdixon@clarkhill.com

Dated:  May 23, 2017

215793455.2 57100/312389